IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NATHANIEL GILLESPIE, | : | CIVIL NO. 3:-09-CV-1453 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| JEFFREY BEARD, et al., | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Nathaniel Gillespie ("plaintiff"), a Pennsylvania state inmate housed at the State Correctional Institution at Dallas, Pennsylvania ("SCI-Dallas"), commenced this civil rights action on July 28, 2009. (Doc. 1.) The defendants are former Pennsylvania Department of Corrections Secretary Jeffrey A. Beard and the following correctional officers and employees from SCI-Dallas: Superintendent Klopotoski, Superintendent's Assistant Lucas, Lt. Bleich, Lt. Mosier, Lt. Musial, Lt. Walters, and Officers Bath, Blaine, Boyes, Corbett, Hogan, Krah, Morelli, Olszyk, Pudlosky, and Wilk. Before the court is a motion for summary judgment pursuant to Federal Rules of Civil Procedure 56, filed on behalf of all defendants. (Doc. 23.) For the reasons set forth below the motion will be deemed unopposed and granted.

I. **Procedural Background**

In his complaint, plaintiff alleges that on various dates throughout his incarceration, defendants denied him food, exercise time in the prison yard, and showers. (Doc. 1, at "Statement of Claim," ¶¶ 1- 4, 10.) Specifically, he alleges that defendant Musial, Bath,

Corbett, Krah, Morelli, Pudlosky, Olszyk and Wilk denied him food. He alleges that he was placed on cell water restriction and that his cell was intentionally flooded by defendant Bath. (Id. at ¶¶ 7-9.) He also alleges that he was the victim of physical and sexual assaults. (Id. at ¶¶ 5-6.) Allegedly, defendant Wilk assaulted him on two separate occasions in early 2009, defendant Morelli physically assaulted him on another occasion while defendant Bath looked on, and, on May 25, 2009, defendant Bath sexually assaulted him. He also claims that defendant Walters discarded a piece of his mail. (Id. at ¶ 11.) Lastly, he alleges that defendants Bleich, Mosier, and Musial were aware of most of the above incidents but took no action to rectify them.

On October 1, 2010, defendants filed a motion for summary judgment (Doc. 23) on all claims except the physical and sexual assault claims. Thereafter, defendants filed supporting documentation. (Docs. 32, 33). Plaintiff failed to file a brief in opposition to the motion. See L.R. 7.6 ("Any party opposing any motion shall file a brief in opposition . . . [or] shall be deemed not to oppose such motion."). He was directed to file a brief in accordance with L.R. 7.6, on or before February 22, 2011, and was cautioned that his failure to comply with the order may result in the granting of the motion or dismissal of this case for failure to prosecute. (Doc. 34 citing FED. R. CIV. P. 41(b) ("If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it."); Link v. Wabash R.R. Co., 370 U.S. 626, 630-31 (1962) (interpreting Federal Rule of Civil Procedure 41(b) as permitting *sua sponte* dismissals by the court);

Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 868 (3d Cir. 1984)). On February 24, 2011, he moved for an extension of time. (Doc. 35.) He was afforded until March 25, 2011, to oppose the motion. (Doc. 36.) He filed a second motion for enlargement of time on March 16, 2011. (Doc. 37.) On April 13, 2011, defendants moved for sanctions. (Doc. 38.) On April 28, 2011, an order issued granting the motion for sanctions and plaintiff's motion for an enlargement of time and affording plaintiff one final opportunity to oppose the motion for summary judgment on or before May 4. 2011. (Doc. 40.) He failed to do so. Consequently, the motion is deemed unopposed.

## II.  Summary Judgment Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, the movant is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).[1] In pertinent part, parties moving for, or opposing, summary judgment must support their position by "citing to particular parts of materials in the record, including depositions, documents,

---

[1] Rule 56 was revised by amendment effective December 1, 2010. The revisions are "to improve the procedures for presenting and deciding summary-judgment motions and to make the procedures more consistent with those already used in many courts." Rule 56 advisory committee notes. "The standard for granting summary judgment remains unchanged," and "[t]he amendments will not affect continuing development of the decisional law construing and applying these phrases." Id. The post-2010 Amendment Rule 56 provisions will be applied in the matter *sub judice*, as the Supreme Court has directed that the 2010 Amendments are to be retroactively applied. See Order of the Supreme Court of the United States accompanying Letters from Chief Justice John G. Roberts, Jr., to Speaker of the House Nancy Pelosi and President of the Senate Joseph R. Biden, Jr. (Apr. 28, 2010).

electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Colwell v. Rite-Aid Corp., 602 F.3d 495, 501 (3d Cir. 2010) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

Plaintiff failed to oppose defendants' motion for summary judgment, and therefore, the motion is deemed unopposed. Moreover, because plaintiff has failed to file a separate statement of material facts controverting the statement filed by defendants, all material facts set forth in defendants' statement of material facts (Doc. 33) will be deemed admitted. See M.D. Pa. LR 56. 1.[2] Even though the motion is unopposed, the Court still must determine whether defendants are entitled to summary judgment as a matter of law. See Lorenzo v. Griffith, 12 F.3d 23, 38 (3d Cir.1993); Anchorage Associates v. Virgin Islands Board of Tax Review, 922 F.2d 168, 174-75 (3d Cir.1990).

### III. Undisputed Facts

Defendants' Statement of Material Facts (Doc. 33) and supporting materials[3] establish

---

[2] LR 56.1 provides, in relevant part, as follows: "All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."

[3] In support of the motion, defendants submitted plaintiff's cell history (Doc. 33-1) various misconducts (Docs. 33-2, 33-8, plaintiff's DC17-X (Doc. 33-4), pertinent RHU Logs (Docs. 33-3, 33-5 - 33-7, Docs. 33-9 - 33-13), Excerpts of plaintiff's deposition (Doc. 33-14),

the following undisputed facts:

Plaintiff, a state inmate, was transferred to SCI-Dallas on June 17, 2008. (Doc. 33 at ¶¶ 1, 3.) On October 4, 2008, he was issued a misconduct (Misconduct A772281) for fighting for which he received a sanction of 120 days of disciplinary custody confinement in the Restricted Housing Unit ("RHU"). (Id. at ¶ 4.) While housed in the RHU, he alleges that officers denied him the following food:

    a. On November 27, 2008, he alleges that he was denied breakfast by Officer Corbett.

    b. On November 27, 2008, he alleges that he was denied lunch by Officer Pudlosky.

    c. On November 28, 2008, he alleges that Officer Pudlosky gave him only an apple to eat for lunch.

    d. On December 9, 2008, he alleges that he was denied lunch by Officers Pudlosky and Olszyk.

    e. On December 23, 2008, Officer Chalker denied him lunch.

    f. On February 9, 2009, he was given a liquid diet tray for dinner by Officers Bath and Morelli.

    g. On February 16, 2009, he was denied lunch by unknown officers.

    h. On February 16, 2009, he was denied dinner by Officers Krah and Morelli.

    i. On March 17, 2009, he was given breakfast; however, Officer Corbett failed to give him a bowl of cereal to complete his meal.

    j. On April 20, 2009, Lt. Musial denied him dinner.

    k. On April 21, 2009, Officer Wilk refused him both breakfast and lunch.

---

and plaintiff's responses to interrogatories (Doc. 33-15).

1. On April 22, 2009, Officer Wilk refused him breakfast. (Id. at ¶ 6.)

He was housed in A pod of the RHU from October 4, 2008 through December 15, 2008. (Id. at ¶ 7.) On November 27, 2008, Officers Corbett, Atkins and Kovac distributed breakfast to the inmates housed in plaintiff's section of the RHU. (Id. at ¶ 8.) He accepted his breakfast on that date. His acceptance of his breakfast meal on that date was recorded by officer Pimm. (Id. at ¶ 9.) Later that day, Officers Pimm and Corbett distributed lunch to the inmates housed in plaintiff's section of the RHU and Officer Pimm recorded his acceptance of his lunch. (Id. at ¶¶ 11, 12.) On December 9, 2008, he refused his lunch tray and suggested that it should be passed on to another inmate. (Id. at ¶ 13.)

On December 15, 2008, plaintiff was moved from A pod to B pod in the RHU. (Id. at ¶ 14.) On December 23, 2008, he refused to uncover the light in his cell and, as a result, he was treated as having refused his lunch, pursuant to Pennsylvania Department of Corrections ("DOC") policy. (Id. at ¶¶ 15, 16.) On January 13, 2009, he was returned to A pod. (Id. at ¶ 17.) On February 9, 2009, he accepted his dinner. (Id. at ¶¶ 18, 19.)

On February 15, 2009, he was issued misconducts for assault, smearing feces in his cell, destruction of property (he damaged his sheets and blankets) and possession of contraband. (Misconducts A889755, A889756, A889757, A889758.) (Id. at ¶ 20.) As a result of these misconducts, he was placed on security restrictions, including the use of a spit mask, yard restriction, and water restriction. (Id. at ¶¶ 20, 21.) While on water restriction,

his water was turned on at least once every two hours. (Id. at ¶ 22.) These restrictions were lifted at 9:00 PM on February 22, 2009. (Id. at ¶ 23.)

On February 16, 2009, he was offered his lunch and accepted it. (Id. at ¶¶ 25, 25.) However, he refused to uncover the light in his cell when the dinner meal was distributed and, as a result, he was treated as having refused his dinner. (Id. at ¶ 26.)

He was transferred from A pod to B pod in the RHU on April 13, 2009. (Id. at ¶ 27.) On April 20, 2009, he refused to uncover the light in his cell and, as a result, he was treated as having refused his dinner. (Id. at ¶¶ 28, 29.) The following day, he refused to uncover the light in his cell when the breakfast and lunch meals were distributed; as a result, he was treated as having refused breakfast and lunch. (Id. at ¶¶ 30, 31.) However, he accepted his dinner that evening. (Id. at ¶ 32.) On April 22, 2009, he accepted breakfast, but refused to step back from his cell door at lunchtime and, as a result, was treated as refusing lunch. (Id. at ¶¶ 33, 34.)

Plaintiff also alleges that he was denied showers on December 23, 2008, May 1, 2009 and May 4, 2009. On December 23, 2008, he was offered a shower; however, because he refused to uncover the cell light, he was treated as having refused his shower. (Id. at ¶ 36.) He complied with the unit's safety procedures and accepted the offer to shower on December 26, 2008. (Id. at ¶ 37.) On May 1, 2009, and May 4, 2009, he declined the offer to shower. (Id. at ¶¶ 38, 39.)

Plaintiff alleged in his complaint that Officers Bath and Morelli turned the water

7

controls on in his cell on May 23, 2009, causing his cell to flood and that another officer flooded his cell on February 13, 2009. (Id. at 40). However, he conceded in his answers to interrogatories that he has no evidence to establish these claims. (Id. at ¶ 41.)

He also alleges that he was denied yard time on April 17, 2009, and April 27, 2009; however, plaintiff was offered yard on these dates and refused. (Id. at ¶ 42.)

### IV. Discussion

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

Plaintiff's claims against Beard, Klopotoski, Lucas, and Boyes hinge on their roles as supervisory personnel. However, liability cannot be predicated solely on the operation of

8

*respondeat superior*. Rizzo, 423 U.S. 362; Rode v. Dellarciprete, 845 F.2d at 1207. "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988); see also, Rizzo v. Goode, 423 U.S. 362 (1976); Atkinson v. Taylor, 316 F.3d 257 (3d Cir. 2003). Thus, individual liability can be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. Rode, *supra*. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. Rode, 845 F.2d at 1208. To maintain a claim for supervisory liability, plaintiff "must show: 1) that the supervising official personally participated in the activity; 2) that the supervising official directed others to violate a person's rights; or 3) that the supervising official had knowledge of and acquiesced in a subordinate's violations." Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

In his deposition, plaintiff conceded that he named Beard, Klopotoski, Lucas and Boyes based on their supervisory roles at SCI-Dallas. (Doc. 33-14, at 1.) Yet, he fails to establish that these supervising officials personally participated in unconstitutional activity, directed others to violate constitutional rights, or had knowledge of and acquiesced in a subordinate's violations. Summary judgment will be entered in favor of these defendants.

A. **Eighth Amendment Claims**

9

The Eighth Amendment does not mandate that prisons be free of discomfort. See Hudson v. McMillian, 503 U.S. 1, 9 (1992). Rather, a prisoner must show that he has been deprived of "the minimal civilized measure of life's necessities," such as food, clothing, shelter, sanitation, medical care, or personal safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citations omitted). To violate the Eighth Amendment, conditions of confinement must be dangerous, intolerable or shockingly substandard. Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir. 1985); Inmates of Allegheny Cnty. Jail v. Pierce, 612 F.2d 754, 757 (3d Cir. 1979).

To state a claim under the Eighth Amendment, an inmate must allege both an objective and subjective component. See Wilson v. Seiter, 501 U.S. 294, 298 (1991). The objective component mandates that "only those deprivations denying 'the minimal civilized measure of life's necessities' . . . are sufficiently grave to form the basis of an Eighth Amendment violation." Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 346 (1981)). This component requires that the deprivation sustained be sufficiently serious, for only "extreme deprivations" are sufficient to make out an Eighth Amendment claim. See Hudson, 503 U.S. at 9.

The subjective component requires that the state actor possess a particular state of mind because only the "unnecessary and wanton infliction of pain" implicates the Eighth Amendment. See Wilson, 501 U.S. at 297. The test used in determining whether the state actor possessed the requisite state of mind is whether the prison official's actions were "deliberately indifferent." See id. at 303. Deliberate indifference is more than a mere lack of

ordinary due care; it is a state of mind equivalent to a reckless disregard of a known risk of harm. See Farmer, 511 U.S. at 834. To establish deliberate indifference, an inmate must show that a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847.

1. Denial of Meals

Plaintiff alleges that Musial, Bath, Corbett, Krah, Morelli, Pudlosky, Olszyk and Wilk denied him ten meals over a five month period of time. However, the record indicates to the contrary. On November 27, 2009, he accepted breakfast and lunch. On February 9, 2009, he accepted his dinner. On February 16, 2009, he accepted lunch. Conversely, on December 9, 2008, he declined his lunch. The remaining six meals were delivered to plaintiff on December 23, 2008, February 16, 2009, April 20, 2009, April 21, 2009, and April 22, 2009. Because he refused to uncover the light in his prison cell at the time his meals were delivered, he was treated as having refused these meals.

The record is devoid of any facts that would lead this court to conclude that defendants deliberately denied plaintiff meals. Nor is there any indication that he suffered any ill effects. Ford v. Brd. of Mgrs of New Jersey State Prison, 407 F.2d 937, 939-940 (3d Cir. 1969) (no Eighth Amendment claim where prisoner fed four slices of bread and one pint of water three times a day with a full meal every three days); Adams v. Kincheloe, 743 F.Supp. 1385, 1391 (E.D.Wash. 1990) (placing inmate on disciplinary five-day diet of "nutra-loaf" did not violate the Eighth Amendment especially since inmate did not suffer

from any weight loss or medical conditions); Briggs v. Heidlebaugh, Civil No. 96-3884, 1997 WL 318081 *3 (E.D.Pa. May 22, 1997) (feeding inmate nothing but bread and cheese for seventy-two hours did not support an Eighth Amendment violation). The party adverse to summary judgment must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989). Gillepsie has failed to oppose the motion and therefore summary judgment will be entered on behalf of defendants Musial, Bath, Corbett, Krah, Morelli, Pudlosky, Olszyk and Wilk.

2. Denial of water, showers, yard exercise

Plaintiff alleges that his Eighth Amendment rights were violated when he was denied showers on December 23, 2008, May 1, 2009 and May 4, 2009. The Eighth Amendment does not require that inmates receive frequent showers. See Davenport v. DeRobertis, 844 F.2d 1310, 1316 (7th Cir. 1988) (holding that one shower a week is constitutionally sufficient); Veteto v. Miller, 829 F. Supp. 1486, 1496 (M.D.Pa. 1992) (dismissing prisoner's claim that deprivation of showers during period of assignment to administrative detention violated Eighth Amendment).

The record demonstrates that, because he refused to uncover his cell light on December 23, 2008, he was treated as having refused his shower. He accepted his next shower on December 26, 2008. On May 1, 2009, and May 4, 2009, he declined the offers to

shower. Plaintiff's "deprivations" were either the result of his refusal to accept the shower when offered or an appropriate, temporary restriction in response to his failure to comply with security procedures. Clearly, there is no Eighth Amendment violation related to the deprivation of showers.

With respect to the issue of the restriction of his cell water as a punitive measure for misconduct, as noted in the "Undisputed Facts" section, *supra*, plaintiff conceded in his interrogatories that he has no evidence in support of this claim. Consequently, defendants' motion will be granted.

Lastly, plaintiff alleges that he was denied exercise privileges. The denial of exercise or recreation can result in a constitutional violation. "[M]eaningful recreation 'is extremely important to the psychological and physical well-being of the inmates.' " Peterkin v. Jeffes, 855 F.2d 1021, 1031 (3d Cir. 1988) (quoting Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979)). However, the lack of exercise can only rise to a constitutional level "where movement is denied and muscles are allowed to atrophy, [and] the health of the individual is threatened." Spain, 600 F.2d at 199. Thus, a constitutional violation will occur when the deprivation of exercise extends for a prolonged period of time and tangible physical harm resulting from the lack of exercise is demonstrated. In order to demonstrate a deprivation of a constitutional right to recreation, plaintiff must satisfy the Eighth Amendment standard and show deliberate indifference on the part of prison officials. See Farmer, 511 U.S. at 834 (1994). Here, plaintiff does not allege any tangible physical harm. Nor does he demonstrate

13

deliberate indifference on the part of defendants. Consequently, defendants' motion will be granted.

### B. First Amendment Claim

Plaintiff seeks to impose liability on defendant Walters for the destruction of a single piece of mail on May 1, 2009. Because a single interference with the delivery of an inmate's personal mail, without more, does not rise to the level of a constitutional deprivation, Morgan v. Montayne, 516 F.2d 1367 (2d Cir. 1975), defendant Walters will be granted summary judgment.

### V. Conclusion

Based on the foregoing, defendants' motion for summary judgment will be deemed unopposed and granted.

BY THE COURT:

JUDGE JAMES M. MUNLEY
United States District Court

Dated:    May 31, 2011

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NATHANIEL GILLESPIE, | : | CIVIL NO. 3:-09-CV-1453 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| JEFFREY BEARD, et al., | : | |
| Defendants | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

AND NOW, to wit, this 31st day of May 2011, upon consideration of defendants' motion for summary judgment (Doc. 23), and in accordance with the foregoing memorandum, it is hereby ORDERED that:

1. Defendants' motion for summary judgment (Doc. 23) is DEEMED unopposed and GRANTED in favor of all defendants on the Eighth Amendment conditions of confinement claims and the First Amendment claim concerning plaintiff's mail.

2. Entry of judgment is DEFERRED pending further order of the Court.

3. The Clerk of Court shall TERMINATE defendants Beard, Klopotoski, Lucas, Mosier, Musial, Walters, Blaine, Boyes, Corbett, Hogan, Krah, Olszyk, and Pudlosky.

4. Defendants Wilk, Morelli, and Bath are afforded until June 24, 2011 to file a dispositive motion on the remaining Eighth Amendment physical and sexual assault claims.

BY THE COURT:

JUDGE JAMES M. MUNLEY
United States District Court